28270. DAVIS *et al. v.* THE STATE.

DECIDED JULY 16, 1940.

*Gordon B. Gann, J. E. Mozley,* for plaintiffs in error.

*H. G. Vandiviere, solicitor-general,* contra.

Broyles, C. J. 1. "'While it is not essential, in an indictment for the larceny of an animal, to describe it by earmarks, yet if this be done, the description must be proved as laid. *Crenshaw* v. *State,* 64 *Ga.* 449. Consequently, where an indictment for the larceny of a hog alleged that it had a crop off the left ear, and a split in the right, and the prosecutor testified that the hog stolen from him had a crop off the right ear and a split in the left, there was a fatal variance; and this variance was not cured by the evidence of another witness who testified that the stolen hog had a crop off one ear and a split in the other, but did not state which ear had the split and which the crop.' *Robertson* v. *State,* 97 *Ga.* 206 (2) (22 S. E. 974), cited and approved in *McLendon* v. *State,* 121 *Ga.* 158 (48 S. E. 902). See also, in this connection, *Wright* v. *State,* 52 *Ga. App.* 202 (182 S. E. 862)." *Mosley* v. *State,* 52 *Ga. App.* 650 (184 S. E. 364).

2. In this case the defendants were convicted of simple larceny (hog stealing). The indictment charged them with stealing two hogs which were described therein as follows: "one black and red spotted hog, weight about 180 pounds, with a slit and underbit in right ear; one solid black hog, with slit in right ear, and weighing about 150 pounds." On the trial the only description of the hogs was that given by the alleged owner, as follows: "There were two of those hogs, one weighing about 150 pounds, and the other one about 180 pounds; the largest one was a spotted hog, red and black spots on it, red color, and had a split in its ear; and the black one was solid black with a kind of split and underbit . . the red spotted hog had a split in its ear and underbit; and the black hog had just a split in its ear." It will be observed that the indictment charged that the earmarks of each hog were in the *right* ear, and that the proof merely showed that the marks were in "its ear." Therefore the description of the hogs was not proved as laid; and under the ruling stated in the preceding headnote there was a fatal variance between the allegata and probata. The conviction of the defendants was unauthorized, and the denial of a new trial was error. *Judgment reversed. MacIntyre, J., concurs.*

Gardner, J., dissenting. The evidence in this case reveals: About midnight the three defendants in a model-A Ford car drew

up to the place of business of Tom Perkins, who operated a barbecue stand and who had, the week before, engaged from the defendants, through Floyd Hill speaking, some hogs. Upon arrival the two hogs were dead, one having been battered in the head, and the other having had its throat cut. They were dead and swollen. Some one of the defendants called to Tom Perkins, who was upstairs at his place of business. Floyd Hill and Robert Davis carried the hogs around the house to the back porch, and preparations were taken to heat water for the purpose of dressing the hogs. One of the defendants, Frank Bowen, had walked down the street. Robert Davis, one of the defendants, remained on the back around the fire. An officer returned with several other officers. Floyd Hill disappeared. The officers took charge of the hogs, and arrested Robert Davis and Frank Bowen that night. Floyd Hill was arrested thereafter, in hiding. The hogs were put on cold storage. The next day the owner (who lived in Cobb County near Mapleton) having been notified, came to Atlanta, and identified the hogs as his own. He had missed other hogs sometime previously. The owner of the hogs identified them by earmarks and other identifications, he being a large dealer in hogs and having purchased these particular ones in south Georgia. Robert Davis had previously worked for the owner, who went to the jail where the defendants Davis and Bowen were confined. Davis gave an assumed name to the officers, when arrested. All the defendants confessed. The defendant, Bowen, made a confession that night, and the other defendants confessed later. The defendants at the trial repudiated the confessions, contending that they were induced by an officer mistreating them, and therefore were not freely and voluntarily made. Tom Perkins, the barbecue man, in his testimony corroborated the defendants as to this. The officers and all others who heard the confessions denied that there was any kind of mistreatment, but testified that the confessions were freely and voluntarily made. The defendant Davis had blood on his clothing. In the confessions one of the defendants stated, in the presence of the others, how the hogs were taken, how and where they were killed. This statement was confirmed by witnesses who went to the spot and found blood and other evidence at the point mentioned in the confession. The evidence discloses some slight variance as to the allegations of ear descriptions in the indictment, and those re-

vealed by the testimony, as set out in the statement of the opinion of the majority of this court. It is stated, "it will be observed that the indictment charged that the earmarks of each hog were in the *right* ear, and that the proof merely showed that the marks were in 'its ear.'" There was no cross-examination or further questioning of any witnesses as to which ear the marks were in, and the photographs of the hogs introduced do not clearly show the definite markings in the ears.

Let us first inquire with reference to the admissibility of the confessions. It is the law that the trial court should first determine whether or not the testimony surrounding the alleged confession is such that as a matter of law it would be excluded. If the testimony surrounding the alleged confession is not so strong, in the opinion of the trial judge, as to exclude it on the ground that it was not a free and voluntary statement, then it becomes an issue of fact as to whether it was freely and voluntarily made, and a jury question under proper instructions from the court as to the law governing confessions. This decision of the judge will not be disturbed by this court, unless it is manifestly abused. In fact, if the State's evidence does not itself show that the statement was not freely and voluntarily made, it is always a jury question. There is no exception that the judge did not properly instruct the jury on this issue. The evidence warranted the jury in considering the confessions as having been freely and voluntarily made, and not having been induced by another by the slightest hope of benefit or the remotest fear of injury. The statement of the defendants and the evidence of Tom Perkins, whose part in this affair, if the undisputed evidence and his own testimony is to be believed, places upon him a grave suspicion of at least a guilty knowledge, which would render his testimony subject to the most careful scrutiny when upon a search for the truth. To say the least, the jury were not authorized to give credence to the testimony of these witnesses and believe them in preference to the testimony of the officers and the other witnesses on whose testimony this record casts no cloud.

But, aliunde the confession, the evidence fully justified the verdict. Larceny is a crime which is most often committed in the darkness of the night; certainly at all times when the thief calculates that there is no eye upon him and that his tracks are covered in secrecy. So in this class of cases the law wisely provides that

the recent possession of stolen property is sufficient within and of itself to justify a conviction if that possession is not explained to the satisfaction of the jury. So let us see then what was the explanation of each of the defendants, other than their confessions. Floyd Hill stated, that he was at home when the defendant Frank Bowen came by his house for some tire tools; that Hill asked Bowen for a ride in the car to Atlanta; that Bowen consented, and Hill got into the car, and afterwards, on the way to Atlanta, casually looked back in the car and discovered the hogs; that upon inquiry of this, he was informed by defendant Bowen that the hogs were obtained by Bowen from Bowen's father; that he went with Bowen to see some relatives at Tom Perkins' place, where Bowen and Davis were to pick him up and return him home; that he later found out that Davis and Bowen had been arrested, and for that reason they did not come for him and had told the officers he (Hill) was with them when the hogs were stolen; and the next day he went home and afterwards was arrested. This was the same defendant whom the barbecue man, Tom Perkins, testified he had engaged the hogs from, about one week before; and in his statement he gave the further reason that he confessed on account of threats.

The defendant Frank Bowen, in his statement, said that about a week before, he saw Tom Perkins, the barbecue man, and engaged some hogs; he wanted them on the foot, but "I told him I was afraid he would jump out. I wanted to bring them dead, and Tom said that he would buy them dead if they were not too big; so I got the hog, and my car broke down. I went to Floyd's house, [Hill] got my tire tool, and asked him if he wanted to go with me, and he said he did. When we got to town some police pulled up beside the car when I stopped. . . Tom Perkins said, 'You look like you got some nice hogs,' and I said 'Yes,' and he says, 'Where did you get them?' and I said, 'I got them at my daddy's. One of them is mine and one is my father's, and I got to sell them.'" The officer got in his car and left, and Robert went up the street somewhere. "I went to a little place right behind Tom's to get me something to eat. The officer grabbed me and commenced hitting me, and asked me where I stole the hogs, and I told him I didn't steal any hogs." Defendant Bowen stated that the officer beat him considerably, and "I told him I stole the

hogs; that was wrong." Defendant Davis in his statement said, in substance, that he was coming from his daddy's, and asked Bowen and Hill whether he could go home with them; that he got in the car, and they carried the hogs to the barbecue man, Tom Perkins, and he went on in the back yard where a fire was built to scald the hogs; that Frank Bowen went for something to eat, and while Davis was standing in the back yard the officer ran upon "them," and he threw down a little drink of whisky, and he was beaten and asked about the hogs, and he stated that he knew nothing of the hogs—that he had just come from his daddy's.

It will be observed that the statements of both Frank Bowen and Frank Hill were in material conflict with the testimony of Perkins, a witness who was unquestionably favorable to them. It will also be observed that the statements of Bowen and Hill conflicted materially. Bowen did not introduce any evidence at all as to having obtained the hogs from his father. While the burden of proof is upon the State to make out the case beyond a reasonable doubt, yet when the State proves the corpus delicti and in connection therewith proves the recent possession of the stolen goods, the burden of making an explanation satisfactory to the jury is upon the defendant. As to the defendant Davis, he gave no explanation as to why he changed his name, or as to the blood on his clothing, and the evidence for the State tended to show that the blood of the hogs had had time to coagulate before the time Davis contended that he got in the car with the hogs, which were by that time stiff and swollen.

Upon an examination of the cases cited by the majority of the court it will be ascertained that there was a definite conflict as between the allegations and the proof, or a total lack of proof of any particularity. The allegations of the indictments in *Robertson* v. *State,* 97 *Ga.* 206 (2), and *Mosley* v. *State,* 52 *Ga. App.* 650 (supra), stated definite marks in the right and left ears of the animals, and the proof showed by positive testimony the reverse, which made a specific conflict. In *Wright* v. *State,* 52 *Ga. App.* 202 (supra), one motor number was alleged, and a different number proved. In *McLendon* v. *State,* 121 *Ga.* 158 (48 S. E. 902), there was a total lack of any proof of the particularity of description of the articles as alleged in the indictment. In the case at bar a specific mark was alleged in the indictment in the right and

left ears, but there was no proof that the marks in the ears were reverse to the allegations. There was simply a statement by the witness that the marks were in "its ear." This is no conflict. In all other particulars the proof fully and in detail followed the allegations of the indictment. For these reasons the writer can not agree with the majority of the court that the judgment should be reversed. In my opinion there is no material variance between the allegations and the proof. The evidence warranted the verdict, and the judgment denying a new trial should be affirmed.